**STATE of Tennessee**

v.

**Michael JACKSON.**

Supreme Court of Tennessee,
at Nashville.

Nov. 27, 2001.

Tony N. Brayton, Memphis, Tennessee, for the appellant, Michael Jackson.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and J. Ross Dyer, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

The defendant in this case was convicted of aggravated robbery and was sentenced to twelve years imprisonment, the maximum sentence allowed for a Range I standard offender convicted of a Class B felony. The trial court applied three enhancement factors, and the Court of Criminal Appeals affirmed two of them: (1) the defendant was a leader in the commission of an offense involving two or more criminal actors, Tenn.Code Ann. § 40–35–114(2); and (2) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn.Code Ann.

§ 40–35–114(8). In addition, the intermediate court determined that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, Tenn.Code Ann. § 40–35–114(20). The defendant now argues that a court may only consider a juvenile record under factor (20), and consequently, the trial court improperly applied factor (8) to his juvenile probation violations. The sole issue in this case, then, is whether factor (20) is the exclusive means for using a juvenile court record to enhance sentences in subsequent adult criminal proceedings. We hold that factor (20) applies only to adjudicated delinquent acts; because juvenile probation violations do not fall within the purview of factor (20), factor (8) was therefore properly applied to enhance the defendant's sentence. Consequently, we find that a sentence of twelve years imprisonment is appropriate and supported by the preponderance of the evidence, and we affirm the judgment of the Court of Criminal Appeals.[1]

## BACKGROUND

On October 27, 1996, then-seventeen year-old defendant Michael S. Jackson, along with an accomplice robbed Mrs. Irma McNeary, a long-time friend of Jackson's mother, at gunpoint in her home in Memphis, Tennessee. The defendant's subsequent arrest three days later marked his twenty-fourth juvenile arrest, thus adding to an extensive criminal history beginning at nine years of age. The defendant was taken to Shelby County Juvenile Court, and on November 1, 1996, he voluntarily confessed to the robbery in an interview conducted by Sergeant Gerold Blum of the Memphis Police Department.

The defendant was tried as an adult, and on May 27, 1999, the jury convicted him of aggravated robbery, a Class B felony. Following a sentencing hearing, the trial court classified the defendant as a Range I standard offender, noting that the defendant's "many, many convictions" had occurred while he was a juvenile and therefore could not be used to enhance the statutory range.[2] However, the court did rely on the defendant's juvenile record to enhance the sentence within Range I. The court found three enhancement factors applicable: (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40–35–114(1); (2) the defendant was a leader in the commission of an offense involving two (2) or more criminal actors, Tenn.Code Ann. § 40–35–114(2); and (3) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn.Code Ann. § 40–35–114(8). Finding no applicable mitigating factors, the court sentenced the defendant to twelve years imprisonment in the Tennessee Department of Correction, the maximum sentence allowed for a Range I standard offender convicted of a Class B felony.

On appeal, the Court of Criminal Appeals found the evidence of guilt sufficient to support the jury's verdict. Moreover, in affirming the defendant's sentence, the court upheld the trial court's application of enhancement factors (2) and (8). In response to the defendant's argument that

1. Oral argument was heard in this case on October 5, 2001, in Gallatin, Sumner County, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

2. At the time of the hearing, the defendant had one adult conviction, which he received when he was eighteen, for the possession of cocaine, a Schedule II controlled substance.

factor (8) was improperly applied because the probation violations were part of his juvenile record, the intermediate court stated only that the "trial court's application of factor (8) is supported by the record."

However, the Court of Criminal Appeals also held that, despite the defendant's lengthy juvenile record, the trial court misapplied factor (1) because that enhancement factor applies only to prior *adult* offenses. The intermediate court did, though, apply enhancement factor (20)— "The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult"—to two of the defendant's delinquent acts: theft of property valued between $1,000 and $10,000 and aggravated burglary.

In his appeal to this Court, the defendant argues that his prior juvenile offenses should be considered only under section 40–35–114(20). He contends, therefore, that use of his juvenile probation violations to enhance his sentence under factor (8) was improper. Because the holding of the Court of Criminal Appeals in this case is contrary to decisions from other panels of the intermediate court finding factor (20) to be the exclusive means for using juvenile court records to enhance sentences in subsequent adult criminal proceedings,[3] we granted permission to appeal to resolve the conflict. For the reasons that follow,

we hold that section 40–35–114(20) only restricts a court's consideration of a juvenile's adjudications of delinquent acts, and consequently, factor (20) is not the exclusive means for using other conduct in a juvenile court record for sentence enhancement purposes. Because probation violations are not "delinquent acts" in themselves, they fall outside the purview of factor (20) and therefore may be properly considered to determine a history of unwillingness to comply with the conditions of release into the community. Accordingly, the trial court properly applied enhancement factor (8) to the defendant's conviction of aggravated robbery, and we affirm the trial court's sentence of twelve years confinement.

## ANALYSIS

In 1995, the legislature amended Tennessee Code Annotated section 40–35–114 by adding enhancement factor (20), which allows for enhancement of a sentence if "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn.Code Ann: § 40–35–114(20). Prior to this amendment, a defendant's juvenile record was considered a sufficient basis for sentence enhancement under section 40–35–114(1), which provides that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those nec-

---

**3.** Contrary to the decision in *State v. Turner*, 41 S.W.3d 663, 673 (Tenn.Crim.App.2000), which held that the defendant's juvenile record provided a sufficient basis to apply enhancement factors (8) and (20) to his especially aggravated kidnapping conviction, other courts have held that factor (20) is the exclusive means for using juvenile offenses to enhance a defendant's sentence for offenses occurring after July 1, 1995. *See, e.g., State v. Faulkner*, No. 03C01–9806–CR–00217, 1999 WL 1039714, at *7 (Tenn.Crim.App. filed at Knoxville, Nov. 12, 1999) (rejecting applica-

tion of factor (8) stating, "When imposing sentence for offenses committed on or after July 1, 1995, a court may consider prior juvenile offenses only under Tenn.Code Ann. § 40–35–114(20)."). Other courts not applying factor (8) have nevertheless adhered to the same general proposition. *See State v. McMahan*, No. 03C01–9707–CR–00262, 1999 WL 177590, at *15 (Tenn.Crim.App. filed at Knoxville, Mar. 31, 1999); *State v. Donnell*, No. M1999–02184–CCA–R3–CD, 2000 WL 1763685, at *12 (Tenn.Crim.App. filed at Nashville, Nov. 30, 2000).

essary to establish the appropriate range." *See State v. Adams,* 864 S.W.2d 31, 34 (Tenn.1993).

After the 1995 amendment went into effect, several panels of the Court of Criminal Appeals recognized that if factor (1) was to continue being interpreted to allow consideration of juvenile records, such interpretation would render factor (20) without any significant effect. Consequently, various panels attempted to reconcile the two factors and have since held that these two factors apply to mutually exclusive instances of conduct: factor (1) applies only to *adult* criminal conduct, and factor (20) applies exclusively to *juvenile* adjudications. *See, e.g., State v. Burns,* No. M1999–00873–CCA–R3–CD, 2000 WL 711148, at *5 (Tenn.Crim.App. filed at Nashville, June 2, 2000); *State v. Brown,* No. 02C01–9710–CC–00419, 1998 WL 742350, at *2 (Tenn.Crim.App. filed at Jackson, Oct. 26, 1998). In addition, several panels have gone further to hold that factor (20) provides the *exclusive* means for allowing a court to consider any part of a juvenile record. *See, e.g., State v. Faulkner,* No. 03C01–9806–CR–00217, 1999 WL 1039714, at *7 (Tenn.Crim.App. filed at Knoxville, Nov. 12, 1999); *State v. Adams,* No. 02C01–9512–CC–00376, 1997 WL 1821, at *4 n. 4 (Tenn.Crim.App. filed at Jackson, Jan. 3, 1997).

■ We agree that factors (1) and (20) are mutually exclusive. If not so construed, the broad interpretation given to factor (1) would render factor (20) "inoperative, superfluous, void, or insignificant." *Tidwell v. Collins,* 522 S.W.2d 674, 676–77 (Tenn.1975). Because the legislature is not presumed to have passed or enacted useless legislation, *see, e.g., Texas Gas Transmission Corp. v. Atkins,* 205 Tenn. 495, 500, 327 S.W.2d 305, 307 (1959), factor (1) must necessarily apply only to adult criminal conduct, and factor (20) must ap-

ply exclusively to juvenile adjudications of delinquent acts.

■ Moreover, we also agree with the lower court that the plain language of factor (20) restricts a court's consideration of a defendant's "adjudicated delinquent acts" to only those delinquent acts that would constitute felonies if committed by an adult. However, the plain language of factor (20) is limited to those offenses that represent "delinquent acts," and a court may consider other offenses under separate enhancement factors. The question arises, then, what constitutes a "delinquent act" as contemplated by the statute? Our response to this question necessarily determines the issue before us today: whether juvenile probation violations constitute "delinquent acts" such that they may only be considered for enhancement under factor (20). Because this issue involves the construction to be given a statute and its application to the facts of this case, it is a question of law; hence, our standard of review is de novo without a presumption of correctness given to the trial court's conclusions of law. *See State v. Hill,* 954 S.W.2d 725, 727 (Tenn.1997).

■ In construing any statute, our "essential duty" is " 'to ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope.' " *Lavin v. Jordon,* 16 S.W.3d 362, 365 (Tenn.2000) (quoting *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.,* 978 S.W.2d 91, 93 (Tenn.1998)). Essentially, where the language of the statute itself is clear and plain on its face and does not lead to absurd or impracticable results, the sole function of the court is to enforce the statute according to its terms. *See, e.g., Gleaves v. Checker Cab Transit. Corp., Inc.,* 15 S.W.3d 799, 802 (Tenn.2000); *Mooney v. Sneed,* 30 S.W.3d 304, 306–07 (Tenn. 2000).

The term "delinquent act" is defined in part in section 37–1–102(b)(9) (Supp.2000) as "an act designated a *crime* under the law, including local ordinances of this state, or of another state if the act occurred in that state, or under federal law . . . ." (emphasis added).[4] Because no part of the Criminal Code classifies a probation violation as a criminal offense, it cannot be considered a "delinquent act." Moreover, a ruling that probation has been violated is not a new conviction,[5] and a court may not impose separate punishment for such violations. *See* Tenn.Code Ann. § 40–35–310; *see also State v. Hunter,* 1 S.W.3d 643, 648 (Tenn.1999) (holding that at the conclusion of a probation revocation hearing, a trial court could either commence execution of the judgment as it was originally entered, crediting only time served in confinement, or modify the defendant's conditions of supervision and extend his probationary period for up to two years, *see* Tenn.Code Ann. § 40–35–308; but the trial court could not increase the defendant's original sentence) (citing *State v. Bowling,* 958 S.W.2d 362, 364 (Tenn.Crim.App.1997)).

The very reason for probation is to give those who violate society's rules of conduct an opportunity to rehabilitate themselves and be restored to "useful and productive citizenship." *State v. Burdin,* 924 S.W.2d 82, 86 (Tenn.1996); *State v. Vance,* 626 S.W.2d 287 (Tenn.Crim.App.1981). Consequently, as courts in other jurisdictions have recognized, a violation of probation is not itself a crime but merely a "mechanism which may trigger the revocation of a previously granted probation." *State v. Painter,* 223 Neb. 808, 394 N.W.2d 292, 294 (1986); *see also People v. Kaczmarek,* 464 Mich. 478, 628 N.W.2d 484, 487 (2001).

## CONCLUSION

Therefore, we hold today that section 40–35–114(20) is not the exclusive means for using juvenile court records to enhance sentences in subsequent adult criminal proceedings. Because probation violations are not "delinquent acts" as that term is defined by our legislature, factor (20) does not prevent these violations from being considered under other enhancement factors.[6] In this case, the defendant's ex-

---

4. Similarly, the phrase "adjudication of delinquency," also referring to the *crimes* committed by a juvenile, means that "a juvenile court has found beyond a reasonable doubt that a child has committed a delinquent act as defined in § 37–1–102, which is an act designated a crime under the law. . . ." Tenn.Code Ann. § 37–5–103(2).

5. It is generally recognized that there is a distinction between probation violation proceedings and criminal trials. " 'In those jurisdictions in which a provision is made for a [parole revocation hearing], the hearing is summary in nature. The defendant is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime. . . .' " *Barker v. State,* 483 S.W.2d 586, 589 (Tenn.Crim.App. 1972) (quoting *Bledsoe v. State,* 215 Tenn. 553, 387 S.W.2d 811, 814 (1965)).

6. Although not raised by the parties, we recognize that courts have held that an adjudica-

tion of a violation of probation may be an "adjudication of a delinquent act *depend[ing] on the basis for the violation,*" *see, e.g., In re Powell,* No. 03A01–9908–CR–00272, 1999 WL 960939, at *3 (Tenn. Ct.App. filed at Knoxville, Oct. 21, 1999) (emphasis added). Based on our decision today, this proposition is expressly overruled. Probation operates only to alleviate a criminal sentence. A judge who places a defendant on probation shows confidence in the probationer's ability to obey the law. When that probationer violates the conditions of probation, regardless of the basis for the violation, the court is then required to decide whether to rescind its "granting of grace" to lessen the impact of a criminal sentence. Accordingly, probation violations, by definition, are not delinquent acts, or crimes, but are merely failed attempts at rehabilitation. That is not to prevent, however, the underlying offense—if deemed a delinquent act that would constitute a felony if committed by an adult—from being considered under factor (20).

tensive history of juvenile criminal conduct includes two offenses that would constitute felonies if committed by an adult, thereby supporting application of factor (20). Moreover, because measures less restrictive than confinement have failed, the application of factor (8) is also proper.

After careful consideration of the evidence presented at both the trial and the sentencing hearing and the nature of the defendant's criminal conduct, we find that a sentence of twelve years imprisonment, the maximum sentence allowed for a Range I standard offender convicted of a Class B felony, is appropriate and supported by the preponderance of the evidence. Consequently, we affirm the judgment of the Court of Criminal Appeals.

Costs of this appeal are assessed to the State of Tennessee.